[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Date of Sentence January 19, 1996 Date of Application January 29, 1996 Date Application Filed February 5, 1996 Date of Decision September 28, 1999
Application for review of sentence imposed by the Superior Court, Judicial District of Hartford.
Docket No. CR 93-85553;
Fred DeCaprio, Defense Counsel, for Petitioner.
Joan Alexander, Assistant State's Attorney, for the State.
Sentence Affirmed.
 BY THE DIVISION
Following a jury trial the petitioner, then 23 years of age was convicted of Murder (§ 53a-54a) and Felony Murder (§53a-54c). He was sentenced to a life sentence (60 years), which is the maximum penalty for this crime.
The following is a summary of the evidence presented at his trial. CT Page 14154
At approximately 2:30 a.m., on September 4, 1993, the defendant visited Lorraine Clouse, who lived at 93 Davis Drive in Bristol, and showed her a .22 caliber pistol. After about twenty minutes, the defendant left Clouse's home, taking the gun with him. Soon thereafter, the defendant returned to Clouse's home and asked her for a hat, saying he was going to rob someone. Clouse told the defendant that she did not have a hat, and he said that he was still going to commit the robbery. Clouse followed the defendant outside, where she watched him approach the victim, who was walking down the street alone. The defendant took out the gun, moved very close to the victim, pointed it at the victim's head and demanded money. Clouse did not see the victim give the defendant any money, but saw the defendant fire a shot at the victim's head.
After firing the shot, the defendant ran away. Clouse went inside her house and locked her door. Shortly thereafter, the defendant knocked on her door and she let him in. The defendant went through Clouse's apartment and out the back door. Clouse went to bed before the police arrived.
Ketsy Rosarlo, who also lived on Davis Drive, heard a gunshot when she was outside in the Davis Drive area on September 4, 1993. Approximately thirty minutes later, the defendant approached her, and told her to "check it out," pointing toward the corner of a nearby building. He then said, "you haven't seen me," and left. Rosario later went to the area to which the defendant pointed, and saw a body on the ground.
Subsequently, Detective Edward Spyros of the Bristol police department met with the defendant in his cell in Southbury and gave the defendant a waiver of rights form, which the defendant read and initialed. Although the defendant first offered Spyros an alibi for the night of the shooting, he later admitted being at the scene of the crime.
The defendant told Spyros that his real name was Kevin Harris, not Bryan Blackman, and that he had used the alias because he was on probation in Florida for automobile theft. Sometime during their discussion, Spyros told the defendant that there was a warrant for his arrest in Florida, and that Florida might want to have him extradited. Spyros asked the defendant if he knew why the Bristol police wanted to talk to him. The defendant replied that people on Davis Drive were saying that he CT Page 14155 had shot the victim, but would not say what had happened, for fear of being killed upon his release from jail. The defendant told Spyros that he would rather "take the body [murder] charge" than either tell the police what had happened or return to Florida. When the defendant told Spyros that he wanted to speak with his lawyer, the interrogation ceased. See State v. Blackman,246 Conn. 547 (1998).
This petitioner has a criminal record which includes convictions for "Strong-arm robbery" in Florida, 1990; Possession of a stolen vehicle in Florida, 1990; Violation of probation in Florida, 1991; he was charged in Florida with Aggravated Assault in 1991-disposition unknown and with Assault in New York City in 1992-disposition unknown. There were also multiple assault charges pending in the Bristol G.A. at the time of his sentencing.
The petitioner clearly presents a significant danger to the community. In the present case, he viciously and cold-bloodedly shot the victim through the eye and there was no evidence that the victim resisted in any way. The killing was without an apparent reason.
The sentencing court pointed out that public protection was the primary goal in imposing the sentence. The record and character of the petitioner and his propensity for violent and deadly criminal behavior is justification for the maximum sentence to be imposed.
The Division, upon reviewing this sentence pursuant to Practice Book § 43-28, finds it to be appropriate and proportionate. The sentence is affirmed.
Klaczak, Norko and O'Keefe, J.s, participated in this decision.